### Derrick D. PROPHET, Plaintiff,

v.

### UNITED STATES, Defendant.

No. 12–278C.

United States Court of Federal Claims.

Aug. 8, 2012.

Derrick D. Prophet, Cincinnati, OH, pro se.

Steven M. Mager, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Washington, D.C.

**ORDER**

HORN, Judge.

On May 2, 2012, *pro se* plaintiff Derrick D. Prophet filed an Application to Proceed *In Forma Pauperis* and a complaint seeking $100,000,000.00 in damages from the United States in the United States Court of Federal Claims. Plaintiff's *pro se* complaint is less than one page and states in full:

1. Identification documents birth certificate, social security card and state identification has claimant name's printed using all capital letters. The handbook for technical writers and editors (Punctuation, Grammar, and Capitalization) drafted and published by National Aeronautics Space Administration. States a person's name is proper noun should always be capitalized meaning first letter in each name is capital letter remaining letters are lowercase. Website (*www.nasa.gov* or *www.sti.nasa.gov* ) (keyword search: Nasa SP–7084)

2. Nationality African American is counterfeit because it identifies the claim-

ant as a continent. The plaintiff has right to change nationality because of two United States Government treaties. First treaty American Declaration of the Rights and Duties of Man adopted at ninth international conference of American States in Bogota Columbia 1948. Right to nationality article xix states every person has right to change nationality if he wishes. Second treaty American Convention on Human Rights Inter American specialized conference on human rights San Jose, Costa Rica 22 November 1969. Article 20 informs right to nationality no one shall be arbitrarily deprived or right to change it.

3. United Nations General Assembly, Human Rights Council, A/HRC/13/34 article 21 right to nationality implies individual right to acquire and change. Notice the case relating to this claim is in the appellate court case # 11–4124; *Derrick Prophet v. United States Government* plaintiff is seeking $100,000,000 dollars for damages.[1]

In sum, plaintiff contends that the instruments he names, the American Declaration of the Rights and Duties of Man, the American Convention on Human Rights, and the United Nations Declaration of Rights of Indigenous People, entitle him to change his nationality, that his full name should appear with only the first letter of his first, middle, and last name capitalized, and that he is entitled to damages. Plaintiff does not, however, claim that he has made a request to have any such changes made.

In the cover sheet accompanying the complaint he filed in this court, plaintiff refers to a case he filed previously in the United States District Court for the Southern District of Ohio, which was dismissed in an unpublished decision, *Prophet v. United States,* No. 1:11–cv–00387 (S.D.Ohio Oct. 6, 2011), and which he noted was on appeal to the United States Court of Appeals for the Sixth Circuit. *See Prophet v. United States,* No. 11–4124 (6th Cir. May 16, 2012). As discussed more fully below, the Sixth Circuit

---

1. Throughout this Order, capitalization, grammatical, and spelling errors are quoted from plaintiff as they appear in the filings submitted by plaintiff to this court.

dismissed plaintiff's appeal with the following notation: "Defendant not served in district court, complaint dismissed prior to service," with an October 20, 2011 date added to the docket, apparently retroactively. In the case filed in the Southern District of Ohio and in the appeal to the Sixth Circuit, the plaintiff also claimed that the United States had issued invalid documents due to over capitalization. Moreover, in the brief plaintiff filed in the Sixth Circuit, as in the case currently before this court, Mr. Prophet asserted that certain international human rights treaties and conventions guaranteed him the right to change his nationality. *See* Appellant Brief, *Prophet v. United States*, No. 11–4124 (6th Cir. Nov. 14, 2011).

On June 18, 2012, the United States filed a motion to dismiss plaintiff's case in this court pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2012), alleging that the court lacks jurisdiction to hear plaintiff's claims.

 When determining whether an initial pleading filed by a *pro se* plaintiff is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their submissions. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *Wickliffe v. United States*, 102 Fed.Cl. 102, 106–107 (2011). However, "there is no 'duty [on the part] of the trial court ... to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Goodman v. United States*, 100 Fed. Cl. 289, 301 (2011); *Bussie v. United States*, 96 Fed.Cl. 89, 94 (2011) *aff'd* 443 Fed.Appx.

542 (Fed.Cir.2011); *Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007). "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed.Cl. 163, 165 (2010) (citing *Hughes v. Rowe*, 449 U.S. at 9, 101 S.Ct. 173 and *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir. 2002)); *Wickliffe v. United States*, 102 Fed.Cl. at 107.

 In this court, along with his complaint, plaintiff submitted an Application to Proceed *In Forma Pauperis* asserting that he is unable to pay the filing fee. His Application indicates that he has been unemployed since July of 2007, has no source of income, and has not received any gifts, inheritances, pensions, annuities, life insurance, rents, interest or dividends in the last twelve months. He also claims he does not own real estate, stock, bonds, cash, savings or checking accounts, an automobile or any other valuable property. In order to provide access to this court to those who cannot pay the filing fees mandated by RCFC 77.1(c), the statute at 28 U.S.C. § 1915 (2006) permits a court to allow plaintiffs to file a complaint without payment of fees or security, under specific circumstances. The standard in 28 U.S.C. § 1915(a)(1) for *in forma pauperis* eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and therefore, whether to allow a plaintiff to proceed *in forma pauperis* is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. *See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 217–18, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *Fuentes v. United States*, 100 Fed.Cl. 85, 92 (2011). In *Fiebelkorn v. United States*, the United States Court of Federal Claims indicated: "[T]he threshold for a motion to proceed *in forma pauperis* is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying

such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States,* 77 Fed.Cl. 59, 62 (2007); *see also Hayes v. United States,* 71 Fed.Cl. 366, 369 (2006). Although this plaintiff may qualify for *in forma pauperis* status, as is discussed below, his complaint must be dismissed for lack of jurisdiction in this court.

■■■ It is well established that " 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' " *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki,* —— U.S. ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 1193, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.") (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235); *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case.") (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990)); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *see also Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time.") (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998)); *Pikulin v. United States,* 97 Fed.Cl. 71, 76, *appeal dismissed,* 425 Fed. Appx. 902 (Fed.Cir.2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte,* even where, as here, neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1369 (Fed.Cir.) (citing *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g and en banc suggestion denied* (Fed.Cir.), *cert. denied,* 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 58 (1998)), *reh'g and reh'g en banc denied* (Fed. Cir. 2004), *cert. dismissed as improvidently granted,* 548 U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006).

■■■ Pursuant to RCFC 8(a) and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2012); Fed.R.Civ.P. 8(a)(1), (2) (2012); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677– 78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir. 1997); *see also Klamath Tribe Claims Comm. v. United States,* 97 Fed.Cl. 203, 208 (2011); *Gonzalez– McCaulley Inv. Grp., Inc. v. United States,* 93 Fed.Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.

Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed. 2004)). As the United States Supreme Court stated in *Ashcroft v. Iqbal,* "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly,*] 550 U.S. at 555 [127 S.Ct. 1955]. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555, 557, 127 S.Ct. 1955).

■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus,* 551 U.S. at 94, 127 S.Ct. 2197 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Samish Indian Nation v. United States,* 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).

■ The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation,* 556 U.S. 287, 289–90, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Greenlee Cnty., Ariz. v. United States,* 487 F.3d 871, 875 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2007), *cert. denied,* 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999).

■ every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298 (Fed.Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S.* [*Corp. v. United States,* 178 Ct.Cl. 599,] 372 F.2d [1002,] 1007–08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting

*Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954))).... Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S. [Corp. v. United States* ], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.; see also [United States v.] Testan,* 424 U.S. at 401–02, 96 S.Ct. 948 ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim–whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " (quoting *Eastport S.S. [Corp. v. United States* ], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States,* 369 F.3d at 1301.

▮▮▮ To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon " 'can fairly be interpreted as mandating compensation by the Federal Government.' " *United States v. Navajo Nation,* 556 U.S. at 290, 129 S.Ct. 1547 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe,* 537 U.S. at 472, 123 S.Ct. 1126; *United States v. Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961; *Blueport Co., LLC v. United States,* 533 F.3d 1374, 1383 (Fed.Cir.2008), *cert. denied,* 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009). The source of law granting mone-

tary relief must be distinct from the Tucker Act itself. *See United States v. Navajo Nation,* 556 U.S. at 290, 129 S.Ct. 1547 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.,* statutes or contracts)."). " 'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.' " *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1308 (Fed.Cir.2008) (quoting *Greenlee Cnty., Ariz. v. United States,* 487 F.3d at 876); *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); *Peoples v. United States,* 87 Fed.Cl. 553, 565–66 (2009).

Plaintiff states in his complaint that his "[i]dentification documents birth certificate, social security card and state identification has claimant name's printed using all capital letters." According to plaintiff, this use of capital letters violates the guidelines set forth in a "handbook for technical writers and editors ... drafted and published by National Aeronautics Space Administration." [2] Plaintiff alleges that the incorrect use of capital letters has the effect of denying him his nationality. In plaintiff's response to defendant's motion to dismiss, plaintiff also contends that, "[t]o be a national in a country names must be capitalized on identification plus possession of birth record is needed. The employees who work at the United Nations are nationals but it does not apply just for them who can be for the masses."

▮▮▮ Defendant correctly points out that nothing in the Tucker Act gives the United States Court of Federal Claims jurisdiction over this claim because the National Aeronautics and Space Administration (NASA) handbook "does not mandate the payment of money damages for any purported failure to

---

**2.** *See Grammar, Punctuation, and Capitalization: A Handbook for Technical Writers and Editors,* SP–7084, National Aeronautics and Space Administration, Office of Management (1990), *http://ntrs.nasa.gov/archive/nasa/casi.ntrs.nasa.*

gov/19900017394_1990017394.pdf. *A Handbook for Technical Writers and Editors* states, "what is capitalized is mostly a matter of editorial style and preference rather than a matter of generally accepted rules." *Id.* at 81.

comply with the guidelines for capitalization contained therein." Similarly, as stated by defendant, "[n]othing in the Social Security Act ... provides for the payment of money damages for a claim regarding allegedly erroneous capitalization on the social security card." In his response to defendant's motion to dismiss, plaintiff does not refute defendant's arguments. Rather, plaintiff asserts, "[t]he coversheet for claim stated how much is it worth no reference about statutes compensation." Plaintiff also states, "[w]hen filing a claim in this court it must be supported by documentation which I have submitted." In its reply, defendant notes correctly that neither the filing of a cover sheet, nor mere conclusory allegations of damages, provides a basis for jurisdiction in this court. *See Bradley v. Chiron Corp.*, 136 F.3d at 1322.

 Defendant also argues that plaintiff's grievance regarding the alleged overuse of capital letters of his name on his birth certificate and other forms of "state identification" are not properly before the United States Court of Federal of Claims because this court lacks jurisdiction over claims against states and state agencies. Defendant is correct that this court has no jurisdiction over plaintiff's claims against state entities or private parties. *See Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1308 (Fed.Cir.2007); *Woodson v. United States*, 89 Fed.Cl. 640, 649 (2009) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." (quoting *Shalhoub v. United States*, 75 Fed. Cl. 584, 585 (2007))).

 Among plaintiff's other assertions is that the American Declaration of the Rights and Duties of Man, the American Convention on Human Rights, and the United Nations Declaration on the Rights of Indigenous Peoples entitle him to change his nationality, and that the "[n]ationality African American is counterfeit because it identifies the claimant as a continent." Plaintiff's response to defendant's motion to dismiss further states that the "United States is complex government with many resources that allows government agencies to get information concerning Africa being

a continent plus understanding an individual can't be a continent." None of these allegations by plaintiff identify a money mandating statute, regulation, or constitutional provision which allows for jurisdiction in this court. Defendant correctly asserts that "[e]xcept as otherwise provided by Act of Congress, the United States Court of Federal Claims shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502 (2006). Plaintiff has failed to cite to any Act of Congress giving this court jurisdiction to hear disputes arising out of violations of any of these human rights instruments. In his response to the motion to dismiss, plaintiff attempts to circumvent this argument by claiming that "[t]he agreements were drafted in international countries by American legislators so the documents are United States agreements," and since "[t]hese documents are technical they do not need to mention compensation because that would be soliciting." Such conventions and declarations, however, are not acts of the United States Congress, signed by the President of the United States, and, therefore, the United States has not waived sovereign immunity to allow an action based on these documents to be brought in federal court.

Finally, defendant contends that even if this court had jurisdiction over plaintiff's claims, 28 U.S.C. § 1500 (2006) would provide a jurisdictional bar to all of plaintiff's claims. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Congress passed Section 1500 to prevent the United States from being required to defend duplicative lawsuits. *See*

*Keene Corp. v. United States*, 508 U.S. 200, 206, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).

 In 2011, the United States Supreme Court clarified the effect of 28 U.S.C. § 1500 in *Tohono O'Odham Nation.* According to the Supreme Court, two pending suits that "are based on substantially the same operative facts ... preclude[ ] jurisdiction in the [Court of Federal Claims] .... regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation,* ─── U.S. ───, 131 S.Ct. 1723, 1731, 179 L.Ed.2d 723 (2011); *see also Trusted Integration, Inc. v. United States,* 659 F.3d 1159, 1164 (Fed.Cir. 2011) ("After *Tohono,* it is clear that we must: (1) not view § 1500 narrowly; (2) focus only on whether two claims share the same operative facts and not on the relief requested; and (3) determine whether two suits share substantially the same operative facts by applying the test developed in *Keene Corp.*"). Section 1500 "bars jurisdiction in the [Court of Federal Claims] not only if the plaintiff sues on an identical claim elsewhere—a suit 'for' the same claim—but also if the plaintiff's other action is related although not identical—a suit 'in respect to' the same claim." *United States v. Tohono O'Odham Nation,* 131 S.Ct. at 1728.

 "[A] suit is pending for purposes of section 1500 until its final adjudication on appeal or until the time for appeal has run." *Jachetta v. United States,* 94 Fed.Cl. 277, 283 (2010). While a suit is pending in another court, a plaintiff may not file an action in the United States Court of Federal Claims. *See, e.g., UNR Indus., Inc. v. United States,* 962 F.2d 1013, 1021 (Fed.Cir.1992), *aff'd sub nom. Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035. "[T]he jurisdiction of the Court [of Federal Claims] depends upon the state of things at the time of the action brought." *Keene Corp. v. United States,* 508 U.S. at 207, 113 S.Ct. 2035 (quoting *Mollan v. Torrance,* 22 U.S. 537, 539, 9 Wheat. 537, 6 L.Ed. 154 (1824)). "[I]f the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, [the] ordinary rules of res judicata and available defenses apply." *UNR Indus., Inc. v. United States,* 962 F.2d at 1021. Any claim filed in the Court of Federal Claims while the same claim is pending in another court is barred by Section 1500, even if the claim is later dismissed by the other court. *See Keene Corp. v. United States,* 508 U.S. at 207, 113 S.Ct. 2035.

As indicated above, defendant provided the court with the complaint plaintiff filed against the United States in the United States District Court for the Southern District of Ohio on June 20, 2011. *See* Complaint, *Prophet v. United States,* No. 1:11–cv–00387 (S.D.Ohio June 20, 2011). Plaintiff's complaint was dismissed by the United States District Court on October 6, 2011. Order, *Prophet v. United States,* No. 1:11–cv–00387, at 2 (S.D. Ohio Oct. 6, 2011). Plaintiff subsequently appealed to the United States Court of Appeals for the Sixth Circuit on October 24, 2011. Appellant's Brief, *Prophet v. United States,* No. 11–4124 (6th Cir. Oct. 24, 2011). Plaintiff's claims filed in the case currently before this court are nearly identical to those he filed in the United States District Court for the Southern District of Ohio and then appealed to the Sixth Circuit. In fact, in his response to defendant's motion to dismiss, plaintiff does not deny that the two suits "are based on substantially the same operative facts," *United States v. Tohono O'Odham Nation,* 131 S.Ct. at 1730, or that the Sixth Circuit appeal was pending when he filed his complaint with this court. Plaintiff's complaint filed in the United States District Court alleged that, "the United States Government issued invalid documents birth certificate, social security card and state id" to plaintiff because "[t]he handbook published (Nasa SP–7084) by NASA concerning grammar, punctuation, and capitalization. Informs Derrick Prophet full caps are used for acronyms and expressions, not for a person's name." Complaint, *Prophet v. United States,* No. 1:11–cv–00387, at 3 (S.D. Ohio June 20, 2011). Plaintiff alleges in the complaint he filed in this court that the same documents have "claimant name's printed using all capital letters," which is contrary to the same handbook, and, thus, plaintiff argues he is entitled to damages. Additionally, as in paragraphs 2 and 3 of plaintiff's complaint filed in this court, plaintiff's briefs filed with the Sixth Circuit focus on the same three human rights instru-

ments that he alleges grant him the right to change his nationality, and the government's alleged misidentification of plaintiff as a "continent." Support for Brief [sic], *Prophet v. United States*, No. 11–4124 (Sixth Cir. Nov. 14 & 15, 2011). In the matter filed in District Court for the Southern District of Ohio and appealed to the Sixth Circuit, plaintiff requested $20,000,000.00 and that his name be printed using proper capitalization. Complaint, *Prophet v. United States*, No. 1:11–cv–00387 (S.D. Ohio June 20, 2011). In the complaint filed in the United States Court of Federal Claims on May 2, 2012, plaintiff removed his request for injunctive relief and substituted a request for an additional $80,000,000.00.

▮▮▮▮▮▮▮▮▮ When plaintiff filed his complaint in the United States Court of Federal Claims on May 2, 2012, the Sixth Circuit docket accessed by the court indicated that the matter was still pending and had not been dismissed. Prior to June 18, 2012, however, when defendant filed its motion to dismiss with this court and enclosed the docket for plaintiff's appeal to the Sixth Circuit as an exhibit, an apparently retroactive dismissal had been added to the Sixth Circuit docket, which stated: "Defendant not served in district court, complaint dismissed prior to service." *Prophet v. United States*, No. 11–4124 (6th Cir. Oct. 20, 2011). This juxtaposition of dates, including the retroactive docket entry dismissing the plaintiff's District Court complaint not on the merits, might raise an interesting Section 1500 issue if jurisdiction for plaintiff's case were otherwise proper in this court. The issue is of little significance here, however, due to plaintiff's failure to identify a

money mandating regulation, statute or constitutional provision or otherwise demonstrate this court's jurisdiction regarding his claims.[3]

Finally, the court notes that plaintiff's complaint fits the definition of a frivolous lawsuit addressed in 28 U.S.C. § 1915(e), in the *in forma pauperis* statute, which allows courts to dismiss lawsuits it determines are "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous if the facts alleged are 'clearly baseless' ... a category encompassing allegations that are 'fanciful' ... 'fantastic' ... and 'delusional....'" *Denton v. Hernandez*, 504 U.S. at 32–33, 112 S.Ct. 1728 (internal citations omitted); *see also McCullough v. United States*, 76 Fed.Cl. at 3; *Schagene v. United States*, 37 Fed.Cl. 661, 663 (1997), *appeal dismissed*, 152 F.3d 947 (Fed.Cir.1998). Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *see also McCullough v. United States*, 76 Fed.Cl. 1, 3 (2006), *appeal dismissed*, 236 Fed.Appx. 615 (Fed.Cir.) *reh'g denied* (Fed.Cir.) *cert. denied*, 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007).

In her Report and Recommendation, in the case similar to the case in this court, the assigned Magistrate Judge in the United States District Court for the Southern Dis-

---

**3.** The doctrine of *res judicata* does not apply to plaintiff's claims despite the District Court's dismissal of plaintiff's nearly identical claims "with prejudice." *See* Order, *Prophet v. United States*, No. 1:11–cv–00387, at 4 (S.D. Ohio Oct. 6, 2011). *Res judicata* bars "'repetitious suits involving the same cause of action' only after 'a court of competent jurisdiction has entered a final judgment on the merits.'" *United States v. Tohono O'Odham Nation*, 131 S.Ct. at 1730 (quoting *Casman v. United States*, 135 Ct.Cl. 647 (1956)); *see also Univs. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1333 (Fed.Cir.2009) ("'[D]ismissals for lack of jurisdiction are not decisions on the merits and therefore have no res judicata effect on subsequent attempts to bring suit in a court of

competent jurisdiction.'" (quoting *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C.Cir.1999))). A dismissal for failure to serve is a dismissal for lack of jurisdiction. *See e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

The Sixth Circuit's dismissal of plaintiff's claim on the grounds that the defendant had not been served in District Court was not "on the merits," which prevented the dismissal, or perhaps even the filing, from having a preclusive effect under Section 1500.

trict of Ohio recommended that the presiding District Judge dismiss plaintiff's *in forma pauperis* complaint against the United States, and indicated that plaintiff's complaint "fail[ed] to allege any particular facts showing that the United States violated plaintiff's rights under federal law." Report and Recommendation, *Prophet v. United States*, No. 1:11–cv–00387, at 3 (S.D. Ohio June 20, 2011). The presiding District Judge adopted the Magistrate Judge's recommendation. *See* Order, *Prophet v. United States*, No. 1:11–cv–00387, at 2 (S.D. Ohio Oct. 6, 2011). The District Judge also indicated that any appeal of the dismissal would not be taken in good faith.[4] *Id.* at 4. As discussed above, plaintiff's complaint in the District Court was nearly identical to the complaint plaintiff subsequently filed in this court. Plaintiff's allegations have no more merit in the United States Court of Federal Claims than they had in the United States District Court.

 The $100,000,000.00 complaint plaintiff filed with this court alleging the overuse of capital letters, the right to change nationalities, and the misidentification of plaintiff as a "continent," is at best "fanciful," and raises no legally cognizable issues. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. at 33, 112 S.Ct. 1728.

The court also notes that plaintiff now has filed three frivolous *in forma pauperis* complaints in federal courts since 2011. In addition to the complaint filed with this court, and the case plaintiff filed against the United States in the Southern District of Ohio, plaintiff filed another unrelated, *in forma pauperis* complaint in the Southern District of Ohio against Carla Oneal, which also was dismissed as frivolous on July 12, 2011. Order, *Prophet v. Oneal, et al.*, No. 1:11–cv–00387, at 1 (S.D.Ohio July 12, 2011) ("The Court certifies pursuant to 28 U.S.C. § 1915(a) that an appeal of any Order adopting the Report

and Recommendation is not taken in good faith and therefore denies plaintiff leave to appeal *in forma pauperis* in the court of Appeals."). The Report and Recommendation that the United States District Court for the Southern District of Ohio adopted in plaintiff's action against Carla Oneal ordered the *sua sponte* dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), which states that a court shall dismiss a case brought *in forma pauperis* if it finds the action is malicious or frivolous. *See* Report and Recommendation, *Prophet v. Oneal, et al.*, No. 1:11–cv–304, at 1, 5 (S.D.Ohio May 13, 2011).

### CONCLUSION

The plaintiff's complaint is **DISMISSED.** The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

---

**4.** Under 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial

court certifies in writing that it is not taken in good faith."